IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**JAMES L. NAGY,**

    **Petitioner,**

**v.**          **Civil Action No.: 3:23-CV-69 (GROH)**

**MELISSA J. BAYLESS,**

    **Respondent.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On March 13, 2023, Petitioner, an inmate incarcerated at FCI Morgantown, acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241, challenging the calculation of his sentence under the First Step Act (FSA). ECF No. 1.[1] On March 17, 2023, Petitioner paid the filing fee. ECF No. 4.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be dismissed without prejudice.

---

[1] All ECF numbers cited herein are from the instant case, 3:23-CV-69, unless otherwise noted.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Petition Filed Under 28 U.S.C. § 2241

The Petitioner filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241. In his three grounds for relief, the Petitioner claims that the Bureau of Prisons (BOP) violated §§ 3632(d)(4)(A)(ii) and 3624(c) when it: (1) failed to credit him at the rate of 15 days of Federal Time Credit (FTC) per every 30 days of successful programming for his entire sentence because he has always been "low and minimum" risk; (2) recommended that his halfway house placement be only 180 days instead of 365 days; and (3) failed to "apply[ ] the Home Confinement factors to Petitioner" and attempted to "coerce" the Petitioner to forfeit FTCs he earned. ECF No. 1 at 5 – 6. Petitioner contends that he filed an administrative remedy, but admits that his grievance at the BP-11 level was incomplete when he stated he was "[a]waiting the expected DENIAL". Id. at 7. For relief, the Petitioner asks for the Court to order the BOP: (1) to recalculate his FTCs using the correct time factor of 15 FTC days per 30 days of programming; (2) provide the Petitioner with an updated FTC computation; (3) to apply the Petitioner's 365 FTCs towards early release; (4) to apply FTCs in excess of 365 days toward additional halfway house placement; (5) provide the Petitioner equity with other inmates in halfway house time placement; (6) update the Petitioner's release date, home confinement eligibility date, and halfway house transfer date, consistent with the requirements of the First Step Act, Second Chance Act, and Equal Protection Clause. Id. at 8. Petitioner further requests that the Court deny any future request for a continuance by the Respondent.

### B.     Respondent's Response to the Order to Show Cause Construed as a Motion to Dismiss

Following the March 20, 2023, issuance of an order to show cause, the Respondent filed a response to the Petition, which the Court construed as a motion to dismiss, with a memorandum and exhibits in support thereof on April 17, 2023. ECF No. 9, 9-1 through 9-8. Therein, Respondent argues Petitioner is not entitled to relief because: (1) he failed to exhaust his administrative remedies prior to filing is habeas corpus petition; and (2) Petitioner has received all the FTCs to which he is entitled, including 15 days of credit pre 30 days of successful programming, starting October 17, 2021; and (3) the initiation of halfway house procedures is discretionary. ECF No. 9. Further, Respondent argues that the Petitioner has received a halfway house date of February 22, 2024, and that upon arrival, the Residential Reentry Center may review the Petitioner for home confinement. Id. at 10.

### C.     Petitioner's Response to the Motion to Dismiss

The Petitioner filed a response on April 27, 2023. ECF Nos. 11, 11-1 through 11-4. Therein, the Petitioner contends that he was found in his two most recent assessments to be FSA eligible based on his rating as a low or minimum risk of recidivating. ECF No. 11 at 2. The Petitioner asserts that he should be excused from exhausting his administrative remedies because: (1) he would suffer undue prejudice and irreparable harm by being required to exhaust; (2) exhausting would be futile because the Respondent "intends to ignore its calculation and application obligations" until an "Auto Calculation" system is operational; and (3) the Respondent has an obligation to correctly calculate his sentence, and prior failures to do so were excused by the Court. Id. at 3.

The Petitioner alleges that the BOP ignores his first assessment on April 14, 2021, and that the BOP chooses to use his second and third assessments on September 30, 2021, and March 23, 2022, as his first and second assessments, thereby denying the Petitioner of credits he earned from April 14, 2021[2], through September 30, 2021. Id. at 5. Further, the Petitioner argues that the BOP has failed to properly credit him Time Credits because of "the BOP's constantly changing interpretations or 'policy' statements." Id. at 7.

### D.     Petitioner's Motions for Expedited Ruling

On July 31, 2023, the Petitioner filed a motion for an expedited ruling on this action. ECF No. 13. The Petitioner filed a second motion for an expedited ruling on September 14, 2023. ECF No. 14.

### III.     STANDARD OF REVIEW

### A.     Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing Section 2255 Cases in the U.S. District Courts.

---

[2] On a separate page, the Petitioner contends this period should have commenced on March 23, 2021. ECF No. 11 at 6. However, Petitioner concedes that he arrived at FCI Morgantown on March 23, 2021, and had his first assessment on April 14, 2021. Id. at 5.

### B.     Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[3] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

### C.     Habeas Corpus Petitions Filed Pursuant to 28 U.S.C. § 2241

A petition filed pursuant to § 2241 is the appropriate method for a prisoner to challenge the fact and length of his confinement, but generally not the conditions of that

---

[3] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

confinement. Preiser v. Rodriguez, 411 U.S. 475, 498 – 499 (1973). "[I]mmediate release or speedier release from [ ] confinement [is] the heart of habeas corpus." Id. at 498.

### D.  Exhaustion of Administrative Remedies

The Bureau of Prisons' Program Statement (BOP PS) 1330.18 § 542.10 et seq.,[4] addresses the Bureau's Administrative Remedy Program, and directs inmates on the processes necessary to exhaust their administrative remedies by filing four mandatory[5] remedies: (1) an informal resolution (BP-8)[6]; (2) an administrative remedy at the facility (BP-9); (3) an appeal to the regional office (BP-10); and (4) a final appeal to the central office (BP-11). Failure to complete all four mandatory remedies is fatal to a claim based on the inmate's failure to exhaust administrative remedies.

The Fourth Circuit recognizes the process that inmates must follow to exhaust administrative remedies:

> The BOP grievance process is set forth at 28 C.F.R. § 542.13–.15 (2009). First, an inmate normally must present his complaint informally to prison staff using a BP–8 form. If the informal complaint does not resolve the dispute, the inmate may make an "Administrative Remedy Request" to the prison

---

[4] See https://www.bop.gov/policy/progstat/1330_018.pdf.

[5] Inmates who are incarcerated in Community Corrections Centers (CCCs) are not required to attempt informal resolution. BOP PS 1330.18 § 542.13.b.

[6] Many BOP institutional handbooks refer to the Informal Resolution Form as the BP-8 form. See:

1. FCI Waseca https://www.bop.gov/locations/institutions/was/was_ao_handbook_eng_031517.pdf;
2. FCI Oxford https://www.bop.gov/locations/institutions/oxf/OXF_aohandbook.pdf;
3. FPC Schuylkill https://www.bop.gov/locations/institutions/sch/SCH_camp_aohandbook.pdf;
4. USMC Springfield https://www.bop.gov/locations/institutions/spg/spg_ao_handbook050917.pdf;
5. USP Lewisburg https://www.bop.gov/locations/institutions/lew/LEW_smu_aohandbook.pdf;
6. FDC Tallahassee https://www.bop.gov/locations/institutions/tal/TAL_fdc_aohandbook.pdf;
7. FCI Fort Dix https://www.bop.gov/locations/institutions/ftd/FTD_aohandbook.pdf; and
8. USP/SCP McCreary https://www.bop.gov/locations/institutions/mcr/MCR_aohandbook.pdf.

> Warden using a BP–9 form. The BP–8 and BP–9 forms are linked. Both forms involve a complaint arising out of the same incident and both must be submitted within twenty calendar days of the date of that incident. 28 C.F.R. § 542.14(a). If the Warden renders an adverse decision on the BP–9, the inmate may appeal to the Regional Director within twenty calendar days of the date the Warden signed the response, using a BP–10 form. 28 C.F.R. § 542.15(a). The inmate may appeal an adverse decision by the Regional Director to the Central Office of the BOP using a BP–11 form. *Id.*

Hill v. Haynes, 380 F. App'x 268, 269, n.1 (4th Cir. 2010).

## IV.    ANALYSIS

### A.    Petitioner Failed to Exhaust his Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions. Failure to exhaust may only be excused upon a showing of cause and prejudice." McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir. 2001), Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981)). Exhaustion as provided in § 1997e(a) is mandatory, regardless of the relief offered through administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741). "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524.

Pursuant to McClung, failure to exhaust may only be excused upon a showing of cause and prejudice. The Petitioner contends both that he exhausted his administrative

7

remedies by filing at the institutional, regional, and central offices [ECF No. 1 at 7], and that he should be excused from exhausting his administrative remedies [ECF No. 11 at 3]. However, Respondent submitted exhibits which demonstrate that although Petitioner filed administrative remedies, those were comprised of one filed at the institution (Remedy ID 1141039-F1) which was denied, one filed at the Regional Office (1141039-R1), which was "closed with the status reason of informational purposes"; and one filed at the Central Office (Remedy ID 1141039-A1) which was rejected because the Petitioner failed to timely file by February 4, 2023, or within 30 days of receiving the Mid-Atlantic Regional Office's response. ECF Nos. 9 at 2 – 3; 9-1 at 3; 9-4 at 3 – 4.

The exhibits submitted by Respondent from the BOP show that the Petitioner failed to fully exhaust his claims, by properly submitting the administrative remedies, and receiving a final determination upon the merits. Rather, Petitioner's administrative remedies at the institutional and regional level were denied or closed, and his remedy was rejected at the Central Office because it was untimely.

Additionally, Petitioner never asserts that he requested but was denied administrative remedy forms for filing BP-8, BP-9, BP-10, and BP-11 administrative remedies, which are required to exhaust pursuant to 28 C.F.R. § 542.13–.15, and BOP Program Statement 1330.18 § 542.10 et seq. As recognized in Carmona, supra, which was cited by the Fourth Circuit in its opinion in McClung:

> [T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the federal agency review process. Following the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds. In this sense, it is the

8

> analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same.
>
> Administrative autonomy is also served by requiring that a federal prisoner justify his failure to exhaust his intra-Bureau remedies. When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust.

Carmona, 243 F.3d at 634 (internal citations omitted).

Accordingly, it appears that Petitioner failed to exhaust all administrative remedies available to address his sentence calculation prior to filing the instant action. Although such a failure to exhaust may be excused for cause and prejudice, Petitioner has not demonstrated either cause or prejudice. The petition does not allege that Petitioner was denied access to the forms necessary to file administrative remedies, or that staff failed or refused to submit those forms once prepared by Petitioner. Further, he does not assert that he timely signed an appeal but that the mail was delayed, or that staff delayed mailing the appeal. In fact, the Petitioner does not provide any explanation or argument why his appeal to the Central Office was untimely. Instead, the petition concedes that Petitioner was "awaiting the expected DENIAL." ECF No. 1 at 7 (emphasis in original). In his response, Petitioner asserts that if he failed to exhaust his administrative remedy at the Central Office, attempting to do so would cause him irreparable harm through delay, was futile because the Respondent had "predetermined" how the Petitioner would be treated, and because the BOP's own automatic sentence calculation system caused the errors he complained of. ECF No. 11 at 3. These arguments are insufficient to demonstrate cause and prejudice to excuse the untimely filing as required.

Before filing suit Petitioner failed to ever receive a response—either a denial or grant of relief—to his Central Office level administrative remedies on the merits. After filing this action, the Petitioner's attempts to obtain administrative remedy relief were rejected for failure to timely complete the administrative remedy process in compliance with the statute and Code of Federal Regulations. Critically, that rejection occurred on April 3, 2023, **after** the Petitioner initiated this action on March 13, 2023. Pursuant to the holdings of McClung and Carmona, the undersigned finds that no cause or prejudice exists to excuse Petitioner's failure to exhaust.

Because Petitioner appears to have failed to exhaust his administrative remedies prior to filing this action, this court is without jurisdiction to consider the merits of the petition. When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999).

### B. Petitioner is Not Entitled to Relief on the Merits

Even if Petitioner's claims were considered on the merits, he is still not entitled to relief under § 2241. Petitioner contends that under the First Step Act he is entitled to earn Time Credits which should be calculated at the rate of 15 Time Credits for each day of successful programming he has completed, starting on April 14, 2021. ECF Nos. 1 at 5, 7, 11 at 5. However, Respondent counters that the Petitioner has received the proper number of Earned Time Credits, which the Petitioner started to accrue on October 17, 2021, at the rate of 15 ETC for each 30 days of successful programming. ECF No. 9 at 6 – 7.

The application of Petitioner's First Step Act Time Credits is governed by 28 C.F.R. § 523.44. In subparagraph (b), that rule provides:

> Where otherwise permitted by this subpart, the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) only if an eligible inmate has:
> (1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;
> (2) Shown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and
> (3) Had the remainder of his or her imposed term of imprisonment computed under applicable law.

In subparagraph (c), the Rule addresses prerelease custody and provides that:

> The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:
> (1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or
> (2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:
> (i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;
> (ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
> (iii) The prisoner is unlikely to recidivate.

Further:

> The Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:

11

> (1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;
> (2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and
> (3) The application of FSA Time Credits would result in transfer to supervised release **no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred**.

28 C.F.R. § 523.44(d) (emphasis added).

Respondent concedes that Petitioner is eligible to have his Time Credits applied because he is a low-risk inmate. ECF No. 9 at 7. However, Respondent asserts that as of March 26, 2023, Petitioner had accrued 208 program days[7] and received 330 days of Time Credits. Id. at 7 – 8. Further, Respondent contends that the Petitioner is not entitled to have these Time Credits applied. Pursuant to 28 C.F.R. § 523.44(d)(3), an inmate must first accrue the threshold of 365 days of Time Credits before those Time Credits may be applied towards early transfer towards prerelease custody in either a halfway house or home confinement. Id. at 8.

---

[7] Pursuant to 28 CFR § 523.42(c):

(1) For every thirty-day period that an eligible inmate has successfully participated in EBRR [Evidence-Based Recidivism Reduction] Programs or PAs [Productive Activities] recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA Time Credits.

(2) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits if the inmate:

(i) Is determined by the Bureau to be at a minimum or low risk for recidivating; and

(ii) Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.

Respondent asserts that the Petitioner was eligible to and did begin to earn an additional five days of credit for each thirty days of programming starting on October 17, 2021, the date of his second assessment when he was found to have a minimum or low recidivism risk of the most recent two consecutive risk and needs assessments. Petitioner argues that he is entitled to an additional five days of Earned Time Credit for each thirty-day period of successful participation, including the time from either March 23, 2021, or April 14, 2021.

However, pursuant to 28 CFR § 523.42(c)(2), it is clear that the Petitioner was only entitled to earn ten days of FSA Time Credits for every thirty-day period that he successfully participated in EBRR Programs or PSA recommended starting on the date of his incarceration, March 23, 2021, until his second consecutive assessment as a minimum or low risk of recidivism inmate on October 17, 2021. On the date of that second assessment, October 17, 2021, the Petitioner began to earn FSA Time Credits at the rate of fifteen days for every thirty-day period that he successfully participated in EBRR Programs or PSA recommended. This calculation provided by the Respondent is consistent with the requirements of 28 CFR § 523.42(c)(2). For all the above reasons, the undersigned finds that even if Petitioner's claims were considered on the merits, that he fails to demonstrate he is entitled to relief.

## V.    RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED** and that the § 2241 proceeding be **DISMISSED WITHOUT PREJUDICE**.

It is further **RECOMMENDED** that Respondent's response to the order to show cause which the Court construes as a motion to dismiss [ECF No. 9] be **GRANTED**.

It is also **RECOMMENDED** that the Petitioner's motions for expedited ruling [ECF Nos. 13, 14] be **TERMINATED AS MOOT.**

The Petitioner shall have **fourteen (14) days** from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record by electronic means.

DATED:       September 22, 2023

                                                  /s/ *Robert W. Trumble*
                                                  ROBERT W. TRUMBLE
                                                  UNITED STATES MAGISTRATE JUDGE